UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-----------------------------------------------------------X
CLYDE WALCOTT,

                Plaintiff,

                                                            Docket No.

    v.

NATIONAL RAILROAD PASSENGER CORP.,

                Defendant
-----------------------------------------------------------X

## COMPLAINT

Plaintiff, by his attorneys, the Naumes Law Group, LLC, complain of the Defendant and allege:

## THE PARTIES

1. Plaintiff, Clyde Walcott, is a resident of Milton, Massachusetts.

2. The defendant is a railroad carrier corporation providing railroad transportation, in interstate commerce by rail and operates a railroad system and railroad yards within the jurisdiction of this Court and in various other States, with a usual place of business in Massachusetts.

3. Prior to July 3, 2018, and at all times hereinafter mentioned, the defendant employed the plaintiff, Clyde Walcott, as a foreman under its direction, supervision and control and in furtherance of defendant's business in interstate commerce.

4. Prior to July 3, 2018, and at all times hereinafter mentioned, the defendant maintained, operated and controlled the Amtrak's Southampton Yard in Boston, Massachusetts which contained defendant's tracks, rails, switches, sidings, roadbeds and appurtenances thereto, over, through and upon which the defendant operated engines, trains and cars under its control and direction.

5. During all times herein mentioned, the defendant was and is engaged in interstate commerce by providing railroad transportation among multiple states.

## JURISDICTION AND VENUE

6. The plaintiff brings the First Cause of Action against the defendant for violations of the Federal Rail Safety Act, 49 U.S.C. § 20109 (FRSA).

7. This Court has subject matter jurisdiction in this case pursuant to the Federal Railroad Safety Act, 49 U.S.C. § 20109(d)(3).

8. Venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District, because defendant resides in this District and/or because defendant does business in this District.

## PROCEDURAL FACTS

9. On September 24, 2018, the plaintiff Clyde Walcott, filed a FRSA Complaint with the Secretary of Labor's Regional OSHA Whistleblower Office. That was within 180 days from the date the plaintiff became aware of the defendant's adverse or unfavorable personnel action against him.

10. The Regional OSHA Whistleblower Office commenced its investigation, and the plaintiffs fully cooperated with OSHA's investigation. However, Department of Labor did not issue a final decision within 210 days after the filing of the FRSA Complaint. The delay was not due to any bad faith on the part of the plaintiff.

11. Pursuant to Section (d)(3) of the FRSA, the plaintiff has a statutory right to bring an original action in a United States district court for a jury trial regarding the Railroad's violations of the FRSA. 49 U.S.C. § 20109(d)(3).

12. Pursuant to 49 U.S.C. § 20109(d)(3), the plaintiff now bring this original action at law and equity for *de novo* review by the United States District Court of the

District of Massachusetts, which Court has jurisdiction over this FRSA action and FELA action without regard to the amount in controversy.

## FACTS

13. At the time of the defendant's FRSA violations, the plaintiff was employed by the defendant and qualified as an employee within the meaning of 49 U.S.C. § 20109.

14. On June 3, 2018 at 2:02 p.m., the plaintiff's supervisor, Joseph C. Allione, instructed him via email to change the number of outbound Train Number 162 to Train Number 169 and release the train "as is" without inspecting the trains locomotive in violation of 49 CFR 229.

15. Mr. Allione's email stated:

**"Due to the lateness of this trainset, we will be turning 162 for 169 "as-is"**

16. Pursuant to 49 CFR 229, a locomotive must be inspected once every calendar day that the locomotive is in use.

17. On June 3, 2018 while Train Number 169 was in route to New York's Penn Station, Amtrak employees discovered that the train had not been properly inspected and reported this failure to Amtrak's Southampton Yard in Boston, Massachusetts.

18. On June 3, 2018 Train Number 169 was delayed for approximately 56 minutes.

19. On June 7, 2018, Mr. Allione attempted to intimidate, coerce, and force the plaintiff to sign a letter to Amtrak in which he accepted responsibility the delay of Train Number 169 on June 3, 2018. The letter stated that Mr. Walcott had released Engine 622 from Southampton Yard without ensuring that the unit received the required

Daily Mechanical Inspection in accordance with AMT-3 and 49 CFR 229. Mr. Walcott refused to sign the letter.

20. On June 7, 2018, Mr. Walcott sent an email to Amtrak administrative officials, Savoy Morrell, DJ Stadler, Richard Anderson, John Moore, and Michael Bello in which he stated that he received and email on June 3, 2018, instructing him and another foreman working the 4 p. m. to 12 a.m. shift to turn Train Number 162 "as is." Mr. Walcott attached Mr. Allione's June 3, 2018 email to his email to Amtrak administrative officials.

21. On June 18, 2018, Mr. Allione retaliated against Mr. Walcott by charging him with various company rule violations day back to May of 2018, stating:

> **CHARGE ONE (1 ):** Your alleged failure to comply with Amtrak's "Standards of Excellence", specifically to the sub-section entitled concerning "Safety," which reads in pertinent part:
> "Amtrak's highest priority is the safety and well-being of our employees and customers. Your help is essential to achieving that goal. You can begin by being sure that you understand and comply with all safety requirements related to your position ...
> And:
> Immediately report to your supervisor all injuries and illnesses that occur-to you, a fellow employee or the general public-while you are performing your duties or on Amtrak property."
>
> **CHARGE TWO (2):** Your alleged failure to comply with Amtrak's "Standards of Excellence", specifically to the sub-section entitled concerning "Attending to Duties," which reads in pertinent part:
> "Amtrak's success depends on using all available resources in the most efficient and productive way possible. As an Amtrak employee and, therefore, the company's most important resource, you have an obligation to perform your duties properly and in accordance with the standards set for your particular job. This requires that you remain alert to your duties at all times. Any activity or behavior that distracts or prevents you or others from attending to duties is unacceptable."
>
> **CHARGE THREE (3):** Your alleged failure to comply with Amtrak's "Standards of Excellence", specifically to the sub-section entitled concerning "Trust and Honesty," which reads in pertinent part:
> "Every productive employment relationship requires that the employee and His/Her employer trust one another. So it is at Amtrak. When you

become part of our company, we place our trust in you. In turn you must conduct yourself honestly and in a way that reflects credit upon Amtrak ....

**SPECIFICATION ONE (1):** On May 20, 2018, while assigned as Foreman II for the 4p-12a shift, you spent approx. one hour and sixteen minutes in the front parking lot with another employee. During this time, you were not engaged in the responsibilities of your duties in the S&I; your General Foreman on duty was unaware of your location during this time. This time not in the S&I was in addition to your leaving and returning to the property earlier in the shift and during the shift.

**SPECIFICATION THREE (3):** On May 21, 2018 you became aware that Carmen Fortes was injured and failed to immediately report the injury to supervision. You further failed to properly submit paperwork documenting the injury.

22. On June 21, 2018 Amtrak held a formal hearing regarding the charges against Mr. Walcott.

23. On July 2, 2018 Mr. Walcott received a letter notifying him of Amtrak's decision regarding the charges against him.

24. On July 3, 2018, Amtrak notified Mr. Walcott that he had been dismissed from Amtrak in all capacities effective immediately.

### COUNT I
### Violation of FRSA

25. The plaintiff, Clyde Walcott, adopts by reference and realleges each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if set forth under this cause of action.

26. The plaintiff, Clyde Walcott, engaged in protected activity under the FRSA when he reported an unsafe working condition to his superiors.

27. He further engaged in protected activity when he emailed his supervisor about an unsafe working condition, to wit, the email from Mr. Allione instructing him to release Train Number 162 without inspecting the locomotive.

28. The defendant had knowledge of all the protected activities referenced above.

29. The defendant took adverse or unfavorable actions against the plaintiff, Clyde Walcott, in whole or in part due to plaintiff's protected activities.

30. The adverse actions included bringing charges against plaintiff and terminating him.

31. In so doing, the defendant acted with reckless disregard for the law and with complete indifference to the plaintiff's rights under the FRSA.

WHEREFORE, in order to encourage employees to freely report all injuries and safety concerns without fear of any retaliation, thereby ensuring the Federal Rail Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area of our nation's railroad operations, the plaintiff demands a Judgment under the FRSA for all relief necessary to make him whole, including but not limited to: expungement of all references to any disciplinary action; lost benefits with interest; lost wages with interest; compensatory damages for economic losses due to defendant's conduct; compensatory damages for mental anguish and emotional distress due to defendant's conduct; the statutory maximum of punitive damages; and special damages for all litigation costs including expert witness fees and attorney fees.

WHEREFORE, plaintiff Clyde Walcott demands judgment against the defendant on Count I in the sum of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS together with the costs and disbursements of this action.

**JURY TRIAL REQUESTED**

Clyde Walcott
By his attorneys,

DATE: June 15, 2020

/s/ Christopher C. Naumes
Robert T. Naumes, BBO #:367660
Christopher C. Naumes, BBO #: 671701
NAUMES LAW GROUP, LLC
2 Granite Avenue, Suite 425
Milton, MA 02186
(617) 227 8444
robert@Naumeslaw.com
christopher@naumeslaw.com
Attorneys for Plaintiff

7